## Chicago & Alton· Railway Company v. William T. Walters.

1. Federal statute—*how construed.* A federal statute which has received a construction by the Supreme Court of the United States will be construed according to the official arbitrament of such court.

2. Car-coupler—*when does not comply with federal statute.* A car-coupler which does not couple automatically by impact without the necessity of men going between the ends of the cars, does not comply with the federal statute with respect to the character of car-couplers to be used in interstate traffic.

3. Car-couplers—*what will not defeat liability for failure to furnish, in compliance with federal statute.* A railroad company cannot by promulgating a rule requiring its employees to perform their work in a particular manner, defeat a recovery in an action for an injury caused by its failure to meet the requirements of the federal statute with respect to car-couplers employed in interstate traffic.

4. Assumed risk—*when does not apply.* Where the actionable negligence alleged is the violation of an express statute, the doctrine of assumed risk does not apply as against the party injured.

5. Evidence—*when exclusion of proper, will not reverse.* The exclusion of proper evidence will not reverse where the evidence sought to be adduced would merely have been cumulative and its exclusion did not prejudice the complaining party.

Action on the case for personal injuries. Appeal from the Circuit Court of McLean County; the Hon. Colostin D. Myers, Judge. presiding. Heard in this court at the May term, 1904. Affirmed. Opinion filed April 20, 1905.

DeMange & Hoblit, for appellant; F. S. Winston, of counsel.

Louis Fitz Henry and Barry & Morrissey, for appellee.

Mr. Justice Puterbaugh delivered the opinion ·of the court.

Appellee recovered a judgment against appellant in the Circuit Court of McLean County for $4,000 for an injury resulting in the amputation of his right hand.

The original declaration charges that appellant being engaged in interstate commerce, negligently failed to have its certain caboose equipped with an automatic coupler for

coupling automatically by impact, as required by an Act of Congress, entitled, "An Act to promote the safety of employees and travelers upon railroads by compelling common carriers engaged in interstate commerce to equip their cars with automatic couplers," etc.   The first additional count charges that appellant having attempted to equip its caboose with an automatic coupler negligently failed to keep the same in repair and permitted it to remain in an unsafe and dangerous condition, and the second additional count charges appellant with common-law negligence in permitting the coupler to become and remain in an unsafe and dangerous condition, of which condition appellant had notice and knowledge and appellee had no knowledge.

The principal ground urged in argument by appellant for reversal of the judgment, is the refusal of the trial court to give to the jury a peremptory instruction asked by appellant at the close of all the evidence in the case.

The facts in the case are substantially as follows:   About eleven o'clock on the night of January 3, 1903, appellee, a freight brakeman in the employ of appellant, was called out as one of the train crew to make a trip from Brighton Park to Bloomington.   In the line of his duty it became necessary to couple a locomotive and caboose, and for this purpose appellee got upon the foot-board of the tender or water tank attached to the locomotive and signaled the engineer to back the locomotive toward the caboose.   While the locomotive was so backing slowly appellee attempted to open the knuckle of the coupler upon the locomotive, but was unable to do so because water from the locomotive tank had dropped upon it, and frozen it fast.   Appellee then stepped off the locomotive, gave a signal to the engineer to back slowly and ran ahead to the caboose and there attempted to lift the coupling pin by operating the lever, but was unable to raise it sufficiently to permit the knuckle to open; he then lifted the pin with his left hand and at the same time was in the act of opening the knuckle with his right hand, when the locomotive still backing slowly, struck the caboose, crushing his right hand

between the open knuckle upon the caboose and the closed knuckle upon the locomotive.

The caboose and locomotive in question were both equipped with so-called Janney automatic couplers, designated by witnesses as standard automatic couplers, in general use upon all first-class railroads.. The coupling device upon the caboose consists of a jaw or knuckle, hinged so as to open and close, with an iron lock-pin inserted through the knuckle when closed, to keep it in that condition. The head of the lock-pin is attached by a short chain to an iron rod, called the lifting-lever, fastened to the end of the caboose and extending to its outer edge, where it is turned at a right angle so as to form a handle. When the knuckle is closed and the pin in place, it is locked and can only be opened after lifting the pin by hand or by raising the handle of the lever, by spreading it apart with the hand. When the knuckle upon both cars to be coupled, is closed, the cars will not couple by impact, but they will couple by impact if the knuckle upon either one or both of the cars is open.

In the operation of coupling it is the duty of the operator to see that the knuckle upon one or both cars to be coupled is opened. If upon observation he finds both knuckles closed, he must by use of the lifting lever, or if that is not in working order, by some other means, lift the pin in the knuckle he desires to open and then open the knuckle with his hand. Lifting the pin and opening the knuckle are independent acts, but both necessary to be performed before the cars will couple. If the cars to be coupled are stationary and in proximity or one is stationary and the other being moved toward it, it becomes necessary for the operator to go between the ends of the cars to open the knuckle with his hand. The evidence tends to show that for two weeks or more prior to the accident, the lifting lever upon the caboose had been bent and out of repair, so that, in the ordinary method of lifting the pin by raising the handle of the lifting lever, the pin could not be raised sufficiently in the knuckle to permit it to open. If appellee

had been able to open the knuckle upon the locomotive it would have coupled with the caboose by impact merely and there would have been no occasion for his going between the two. Finding the knuckle upon the caboose also closed, appellee was obliged to go between the caboose and the approaching locomotive to open the knuckle.

It is not argued that the caboose in question was not, within the meaning of the Act of Congress, a "car used in moving interstate traffic," but it is insisted that it was equipped with a coupler such as is required by that act. Section 2 of the act in question is as follows: "That on and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." It is contended by appellant that the words "without the necessity of men going between the ends of the cars" do not apply to the act of coupling but apply only to the act of uncoupling. This is a federal statute and we are bound by the construction put upon it by the United States Supreme Court. While some of the federal circuit courts have held otherwise, the question has been recently definitely settled in Johnson v. Southern Pacific Co., 25 Supreme Court Reporter, 158, in an opinion by Mr. Chief Justice Fuller. Referring to the words quoted, it is there said: "The phrase literally covers both coupling and uncoupling, and if read, as it should be, with a comma after the word 'uncoupled,' this becomes entirely clear. The risk in coupling and uncoupling was the evil sought to be remedied, and that risk was to be obviated by the use of couplers actually coupling automatically." Inasmuch, therefore, as the coupler upon the caboose in question did not couple automatically by impact without the necessity of men going between the ends of the cars, it must be held that it did not comply with the requirements of the Act of Congress, and that under the provisions of section 8 of that Act appellee

cannot be deemed to have assumed the risk thereby occasioned.

It is not seriously controverted that appellant was guilty of negligence in permitting the lifting lever upon the caboose to remain bent so that the lock-pin in the knuckle of the coupler could not be lifted by raising the handle of the lever. Nor can appellant be permitted to excuse its negligence in failing to equip the caboose with a coupler coupling automatically by impact without the necessity of men going between the ends of the cars.

The main contention of appellant and the one presenting the most serious question involved is, that the trial court should have held as a matter of law that appellee was precluded from recovering damages because of his own contributory negligence.

Appellee was the only witness present and in a position to observe all that transpired at the time of his injury, and the statement of facts hereinbefore made, is substantially his version of the occurrence. It is argued that as appellee was in control of the movements of the locomotive through signals given by him to the engineer, it was his duty upon observing the condition of the coupler upon the locomotive to signal the engineer to stop before he attempted to adjust the coupler upon the caboose; that common prudence as well as the published rules of the company, of which rules appellee had notice, required him to ascertain, by examination, the condition of the coupling apparatus before signaling the engineer to back toward the caboose for the impact; that he must be held to have known and appreciated the danger of having his hand upon the knuckle of the coupler on the caboose, when the locomotive was approaching, and should have observed its proximity and removed his hand therefrom before the impact, and that a failure to observe these precautions constituted such contributory negligence upon his part as bars a recovery. It is further argued, that appellee was guilty of contributory negligence in disobeying the rules of the company, above referred to, prohibiting employees from coupling by hand in all cases where a

stick could be used to guide the link or shackle, and "in getting in between cars in motion to uncouple them and all similar imprudences."

The duty being enjoined upon appellant by statute, to equip the caboose in question with a coupler operating automatically, appellee, when he left the locomotive and ran toward the caboose, had a right to assume that the caboose was so equipped, and that by merely raising the handle of the lifting lever at the outer edge of the caboose, the coupler would be in a position to couple automatically by impact. Upon reaching the caboose appellee found that the lifting lever did not perform its office, either in whole or in part, and his attention was then necessarily directed to the duty of adjusting the coupler so that a coupling could be effected. True, upon ascertaining the situation, he might have signaled the engineer to stop the locomotive, or he might have stood aside and permitted the impact, and in either case, no injury would have resulted, but the emergency thus suddenly forced upon him could ordinarily be met in almost an instant by lifting the pin and opening the knuckle with his hands, and if he had succeeded in his effort in that direction, for which he ordinarily had ample time, he would not have been injured. Appellee must be held to have known that the locomotive was approaching the caboose, but he was acting hurriedly, in the darkness of midnight, to meet the emergency, and these conditions must to some extent have obscured his opportunity for deliberation and observation. All these circumstances and the inferences to be drawn therefrom, including the presumption to which appellee was entitled, that he would not knowingly incur physical pain, were proper to be considered and weighed by the jury in determining the question as to whether he was in the exercise of due care for his own safety. The rule promulgated by appellant prohibiting employees from coupling by hand and requiring the use of a stick in all cases where a stick could be used, obviously has no application to the case, but is intended to apply only to a type of link and pin couplers. Appellant cannot avoid the re-

quirement of the Act of Congress, by a rule requiring its employees to perform their work in a particular manner. Furthermore, it does not appear that a stick could have been used in opening the knuckle of the coupler upon the caboose.

Upon a careful consideration of the evidence in the case and the inferences to be reasonably drawn therefrom, we think the court properly refused to give to the jury the peremptory instruction asked by appellant, and we are not prepared to say that the finding of the jury, that appellee was not guilty of negligence contributing to his injury, is so manifestly against the weight of the evidence as to justify us in setting the same aside.

The court sustained objections to two questions asked appellee upon cross-examination, the answers to which would have shown that when appellee found the knuckle upon the locomotive frozen, he did not signal the engineer to stop before examining the coupler upon the caboose, and that after he ascertained that the coupler upon the caboose did not operate properly, he did not signal the engineer to stop or go slower. There was no valid objection to the question and the court should have permitted them to be answered, but it is clear from the evidence that appellee gave to the engineer no signal other than the one to back slowly toward the caboose, and his answer that he gave no other signal would have been cumulative merely. Sustaining the objection did not, therefore, prejudice the appellant.

The first instruction given on behalf of appellee is as follows : " If you believe from the evidence that the coupling apparatus was out of repair as charged in the declaration and that its condition and the effect thereof on the operation of the knuckle was not discoverable by the use of ordinary care, then and in such case the plaintiff cannot under the law be held to have assumed the risk of such defect." The objection urged to this instruction is, that the evidence shows that the coupling apparatus was in excellent repair; that only the lever-rod used to raise the pin

for uncoupling purposes was out of repair. The objection is without merit. The lifting-lever must be held to be a part of the coupling apparatus and the latter cannot be said to have been in good repair when the lever necessary to operate it, was out of repair. The instruction as given stated the law more favorably to appellant than it was entitled to, because, as we have heretofore held, appellee did not assume the risk of operating a coupler which would not couple the caboose and locomotive without the necessity of his going between the ends of the cars. For substantially the same reasons, the objection urged to the sixth instruction given on behalf of appellee, is without force. The court did not err in refusing the third, sixth and eighth instructions tendered by appellant, for the reason that such of those instructions as was proper were covered by others which were given.

The record being free from prejudicial error and the verdict being supported by the evidence, the judgment is affirmed.

*Affirmed.*